UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAR BRANDON GOLSON,<br><br>Plaintiff,<br><br>v.<br><br>J. NARVAEZ, et al.,<br><br>Defendants. | Case No. 18-cv-01966-WHO (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**<br><br>**ORDER REFERRING THE ACTION FOR SETTLEMENT;**<br><br>**ORDER STAYING ACTION**<br><br>Dkt. No. 72 |

**INTRODUCTION**

Plaintiff Jamar Brandon Golson alleges in this 42 U.S.C. § 1983 action that Salinas Valley State Prison correctional officers used excessive force against him and that medical staff were deliberately indifferent to his serious medical needs, thereby violating his Eighth Amendment rights. Defendants move for summary judgment on grounds that Golson did not exhaust his administrative remedies against medical staff, and on grounds that the correctional officers used force in a good-faith effort to restore and maintain discipline.

Defendants' motion for summary judgment is GRANTED regarding the claims against medical staff and DENIED regarding the claims against the correctional officers. Defendants have shown that Golson failed to exhaust his administrative remedies against medical staff, and Golson has not shown a genuine dispute of material fact on this issue. However, he has shown a genuine dispute of material fact that defendant correctional officers used excessive force. According to him, after finding possible contraband, a prison guard slammed him against a wall and jumped on top of him, along with other

1    officers, which was excessive under the circumstances. Defendants have a different story,
2    creating the material dispute.
3          The matter is REFERRED to the Honorable Judge Illman for settlement of the
4    excessive force claims.

## BACKGROUND

6          Golson is a California state prisoner who was housed at Salinas Valley State Prison
7    when the events giving rise to this suit occurred.

**i.  Excessive Force Claim**

9          Golson alleges that on April 23, 2017 he was at an x-ray screening with defendant J.
10   Narvaez, a correctional officer. (Am. Compl., Dkt. No. 49-1 at 5-6.) Narvaez conducted a
11   clothed pat-down search of Golson. (*Id.* at 6.) As Golson put out his hands for an
12   additional search, he removed a candy bar from his shirt pocket and placed it in front of
13   him. (*Id.*) Narvaez asked him, "What did you throw?" and grabbed Golson's "penis
14   genital area" causing him "unb[e]arable pain." (*Id.* at 6-7.) Golson grabbed Narvaez's
15   hand to remove it and stop the pain. (*Id.* at 7.) Narvaez let go and then "slammed" him
16   against the wall, causing him to fall to the ground, whereupon Narvaez jumped on top of
17   Golson, which caused his shoulder to separate. (*Id.*) Other correctional officers —
18   defendants Alvarado, Akins, and Aranda — arrived on the scene and then also jumped on
19   top of him, which caused the pain to worsen. (*Id.* at 8.) Narvaez threatened to cause more
20   pain and encouraged other defendants to do the same. (*Id.* at 9.) Golson later received
21   medical treatment for his injuries. (*Id.* at 10.)

22         Defendants offer a different version of events. Narvaez and Alvarado were
23   assigned as visiting room officers to the x-ray examination room on April 23, 2017.
24   (Defs.' Mot. for Summ. J. (MSJ), Dkt. No. 72 at 10-11.) Their duties included providing
25   security, searching prisoners for contraband, and putting prisoners through a low-dose x-
26   ray machine. (*Id.* at 11.) When Golson's x-ray scan showed that he had a foreign object in
27   the front pocket of his shirt, Narvaez directed him to prepare for a clothed-body search,
28   which he did. (*Id.* at 12.) After feeling a hard object in the shirt pocket during the search,

2

Narvaez asked Golson what it was. (*Id.*) He said it was a candy bar and reached for it. Narvaez said he would take it, but then Golson pinned Narvaez's hands and arms under his own. (*Id.*) He ordered Golson to stop resisting and get on the floor, but he "ducked down and lunged forward" towards the wall, in what was a likely "an attempt to break free from Narvaez," and kicked backwards with his right foot, striking Narvaez's knee. (*Id.*)

Another officer, defendant Alvarado-Solorio, who had seen "most of this," activated her alarm, and arrived about ten seconds later. (*Id.* at 13.) Officer Akins, who was 100 feet away in another office, responded and arrived a few seconds after the alarm sounded. (*Id.*) Narvaez, following his training and experience on best practices, put Golson on the ground and got on top of him. (*Id.*) He saw Golson reach under his body with his right hand, which led Narvaez to think he was reaching for contraband or a weapon, which necessitated having to cuff him. (*Id.*) Golson testified at his deposition that this was the moment when his shoulder separated. (*Id.*)

Golson then threw his right elbow back, whereupon Narvaez temporarily secured Golson's right arm. (*Id.*) He then saw Golson attempt to use his left hand to reach under his body. (*Id.*) Alvarado-Solorio then secured Golson's legs by placing her knees and hands over them to prevent him from kicking. (*Id.*) Officer Akins arrived to see Narvaez on Golson's back, telling him to stop resisting and to put his hands behind his back. (*Id.* at 14.) Akins also saw that Golson had his hands under his body, near his waist. (*Id.*) He secured Golson's right arm, and pulled it behind his back. (*Id.*)

Golson continued to resist and in fact tried to get back on his feet, while Narvaez continued to tell him to stop resisting. (*Id.*) At this time Aranda arrived, but before he entered the room, he heard staff yelling "stop resisting." (*Id.*) When he entered the room, he saw Narvaez and Akins attempting to put him into a handcuffing position while they were on top of the face-down Golson. (*Id.*) Aranda saw that Akins had Golson's right arm behind his back and under control, and that Narvaez was attempting to pull Golson's left arm from underneath Golson's waist area. (*Id.*) Aranda observed that Golson was resisting and was in fact attempting to get off the floor. (*Id.*)

1   Narvaez then got control of Golson's left arm and placed it behind his back. (*Id.*)
2   Aranda handcuffed Golson while placing his left knee on his right shoulder to keep him on
3   the floor. (*Id.*) Narvaez states that he did not "inappropriately touch Golson during the
4   incident, nor did he use force until after Golson did not comply with orders to get down
5   and started becoming combative." (*Id.*)

6   Two candy bars belonging to Golson were found. (*Id.*) Both tested positive for
7   heroin and were therefore contraband. (*Id.*) Golson pleaded no contest in the Monterey
8   County Superior Court to state criminal charges of possessing a controlled substance and
9   delaying a peace officer. (*Id.*) Golson admitted at his deposition that he possessed a
10  controlled substance and delayed peace officers. (*Id.*)

**ii.   Medical Care Claim**

Golson alleges that doctors at Salinas Valley State Prison were deliberately indifferent to his serious medical needs when they denied his request to be seen by an orthopedic specialist and when they refused to renew his pain medication prescription. The defendants are Erguiza, a nurse practitioner; Dr. D. Bright, Chief Physician and Surgeon at Salinas Valley; and Dr. K. Kumar, Chief Medical Executive at Salinas Valley.

**a.   Medical Care**

According to Golson, on the same day that the above incident occurred he was sent to an outside hospital for treatment for his shoulder injury. (Am. Compl., Dkt. No. 49-1 at 13.) When he returned to the prison, Erguiza referred Golson to an orthopedic specialist in response to a recommendation from a doctor who treated Golson at the hospital. (*Id.* at 14.) He also gave Golson a five-day prescription for acetaminophen with codeine phosphate as pain treatment. (*Id.*) Golson alleges that defendants Drs. K. Kumar and D. Bright denied Erguiza's April 26 and June 22 specialist referrals, thereby violating his Eighth Amendment rights. (*Id.*) He also alleges that Kumar, Bright, and Erguiza for a month denied his requests to have his medication prescription renewed. (*Id.* at 16.)

Defendants present a different version of events. On April 23 Golson was sent to Navidad Medical Center at Erguiza's request, where he was x-rayed and determined to

4

have an AC separation. (MSJ, Dkt. No. 72 at 15.) On April 26, Erguiza submitted a request to prison authorities on Golson's behalf for a referral to an orthopedic specialist. (*Id.*) On May 30, he sent Golson for a second x-ray because Golson stated that he continued to have pain. (*Id.* at 16.) On July 2 Erguiza submitted a request on Golson's behalf for physical therapy. (*Id.*) Defendants assert Erguiza could submit a request but had no authority to grant one. (*Id.* at 15-16.) Golson submitted two health care appeals related to his shoulder. (*Id.* at 16.) Erguiza interviewed Golson as part of the appeal process. (*Id.*)

On May 16 Bright denied the April 26 referral request. (*Id.* at 17.) He determined that an orthopedic consult and surgery were not necessary because Golson's x-rays showed only a mild grade separation. (*Id.*) Bright denied the June 22 request on June 26. (*Id.*) Golson's second round of x-rays showed a moderate separation, which was an upgrade in seriousness from the prior diagnosis, but an orthopedic consult was still not medically necessary. (*Id.*) In Bright's medical opinion a "moderate separation is initially treated non-operatively and consisted of rest, ice, immobilization, and analgesics, and the initial treatment can take up to twelve weeks before a patient can return to normal activity." (*Id.*) Bright also reviewed and denied Golson's medical care appeals. (*Id.*)

Kumar was involved only as a second-level grievance reviewer — it is not her responsibility to approve or deny referral requests unless Bright is out. (*Id.* at 18.) As a second-level reviewer Kumar did not make a medical decision to grant or deny; rather she reviewed the medical evidence, determined what medical guidelines were appropriate, whether there was any missing information or inconsistency, and whether an approval or denial was consistent with the guidelines. (*Id.*) She concluded that the denial of the referral was consistent with medical guidelines for treating Golson's Grade 3 left AC separation. (*Id.*)

    **b.**    **Exhaustion**

Golson filed only two medical grievances related to his shoulder injury. In the first, SVSP HC 17057516, he asked for renewal of his pain medication prescription. (MSJ,

5

Gates Decl., Dkt. No. 72-2 ¶ 9.).  In the second, SVSP HC 17057939, he asked to see a specialist, for additional pain medication, and for a for a waist chain chronology.  (*Id.*)  Bright and Kumar are never mentioned nor are their actions described in either grievance.  Erguiza is mentioned in the first, but Golson says only that she confirmed that his prescription had expired.  (*Id.*, 602 Grievance Form, Dkt. No. 72-2 at 12.)  He does complain about Erguiza in his June 2 response to the denial of his first grievance at the first level.  (*Id.* at 13.)  Because this complaint about Erguiza does not appear in the initial grievance, it cannot serve to satisfy the exhaustion requirement.

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c).  The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  It is not the task of the

court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## DISCUSSION

### i.   Exhaustion of Medical Care Claims

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. 1997e(a).  Compliance with the exhaustion requirement is "mandatory," *Porter v. Nussle*, 534 U.S. 516, 524 (2002), and is "no longer left to the discretion of the district court," *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  Exhaustion can be excused only if the administrative process is unavailable or not capable of use.  *Ross v. Blake*, 578 U.S. 632, 642-644 (2016) ("aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'").  To exhaust administrative remedies properly, inmates must comply with the applicable procedural rules because administrative exhaustion is governed by the prison grievance process itself, not by the PLRA.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  A grievant must use "all the steps the agency holds out" and must do so "properly."  *Woodford*, 548 U.S. at 90 (citation omitted).

Under the California regulations that applied at the time the incidents at issue in this action occurred, a grievant may "appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  15 Cal. Code Regs. § 3084.1(a).  The appeal must "describe the specific issue under appeal and the relief requested," *id.* § 3084.2(a), and it must list all staff member(s) involved and shall describe their involvement in the issue, *id.* § 3084.2(a)(3).  To exhaust an appeal, a grievant must

1  pursue his appeal through three levels of administrative review, and an appeal is not

2  exhausted until an inmate receives a decision from the third level of review. *Id.* §§ 3084.7;

3  3084.1(b).

4      Defendants Erguiza, Bright, and Kumar have presented evidence that plaintiff did

5  not administratively exhaust his claims against them. He filed two medical grievances

6  related to his shoulder injury. In the first, SVSP HC 17057516, he asked to have his pain

7  medication prescription renewed. (MSJ, 602 Grievance, Dkt. No. 72-2 at 12.) He

8  submitted it on the same day he ran out of his medication (May 4, 2017). (*Id.*) He does

9  not mention Kumar or Bright. He does refer to Erguiza in the original 602 grievance, but

10  only to say that she confirmed that his prescription had expired.[1] (*Id.*) Also, because the

11  appeal was submitted on the day his medication ran out, he cannot have been grieving any

12  delay in receiving a renewal.

13      In the second, SVSP HC 17057939, Golson asks to see a specialist and to receive

14  medication for his shoulder injury. (MSJ, 602 Grievance, Dkt. No. 72-2 at 22, 24.) He

15  does not mention Erguiza, Bright, or Kumar. He says only that on "7-6-17 I was informed

16  by the doctor that his request of me seeing a specialist was denied." (*Id.* at 22.) This

17  cannot be construed as grieving that (or any) specific person's action. Rather, he merely

18  states that he was informed by the (unnamed) requesting doctor that the referral was

19  denied. Against the evidence presented by defendants, Golson asserts in a conclusory

20  fashion that he exhausted his administrative remedies. (Opp., Dkt. No. 74 at 4.)

21      Golson did not exhaust his administrative remedies. It is undisputed that the initial

22  grievances fail to complain of the actions of Erguiza, Bright, or Kumar, or even to mention

23  them in connection with insufficient medical treatment. Because the grievance fails to list

24  all staff members involved and describe their involvement in the issue, it fails to satisfy the

25  prison's exhaustion requirement under 15 Cal. Code Regs. § 3084.2(a)(3). Golson's

---

[1] Golson raises a complaint about Erguiza in his June 2 response to the denial of his grievance at the first level. (MSJ, Dkt. No. 72-2 at 13.) Because this complaint does not appear in the original grievance, it cannot serve to satisfy the exhaustion requirement.

8

1    conclusory allegation that he exhausted does not create a genuine issue of material fact.
2    Also, he has made no allegation or offered any evidence that the exhaustion process was
3    unavailable or not capable of use. Nor can he — he used the process. On this record, he
4    has offered no evidence that he exhausted his administrative remedies before bringing this
5    civil rights action, and he offers no reason that the exhaustion requirement should be
6    excused. He has not shown evidence that precludes summary judgment. Accordingly,
7    defendants' motion for summary judgment is GRANTED in favor of Erguiza, Bright, and
8    Kumar.

### ii.  Excessive Force Claims

When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Jeffers v. Gomez*, 267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

Golson asserts that defendants used excessive force in violation of the Eighth Amendment. He states that after Narvaez asked him, "What did you throw?" Narvaez grabbed Golson's genitals, causing great pain. Golson then grabbed Narvaez hand to remove it. Narvaez let go, slammed him against the wall, and jumped on top of him. When other officers arrived, they also jumped on him, causing pain.

Defendants offer a different version of events. Narvaez asserts that after he found

suspected contraband, he attempted to restrain Golson, who strenuously resisted, kicked Narvaez's knee, and attempted to break free.

I am presented with two diametrically opposed sets of facts, the differences between which directly relate to whether the force used against Golson was a constitutional violation. If Golson's version of facts is true, defendants applied force to cause harm, not to restore order. According to Golson, Narvaez threw Golson against a wall and jumped on top of him in response to Golson trying to remove Narvaez's hand from his genitals. According to Golson, the other officers joined in the excessive force. If defendants' version of facts is true, they applied force in a good-faith effort to maintain or restore discipline in the face of a resisting Golson. Golson has shown a triable issue of material fact against defendants. To this extent, defendants' motion for summary judgment is DENIED.

Defendants contend that they are entitled to qualified immunity. (MSJ, Dkt. No. 72 at 29.) The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an official is entitled to qualified immunity, the court must decide whether the facts alleged show that the official's conduct violated a constitutional right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling *Saucier*'s requirement that qualified immunity analysis proceed in a particular sequence). "[I]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

Regarding the first prong, the threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier*, 533 U.S. at 201; *see Martin v. City of Oceanside*,

10

360 F.3d 1078, 1082 (9th Cir. 2004) (in performing the initial inquiry, court is obligated to accept plaintiff's facts as alleged, but not necessarily his application of law to the facts; the issue is not whether a claim is stated for a violation of plaintiff's constitutional rights, but rather whether the defendants actually violated a constitutional right) (emphasis in original). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

Defendants are not entitled to qualified immunity. When the facts are seen in the light most favorable to Golson, they show that defendants violated a constitutional right. According to Golson, Narvaez, in response to finding contraband, touched Golson's genitals and then after Golson attempted to remove his hand, threw him against a wall and jumped on top of him. Furthermore, it would have been clear to a reasonable officer that his conduct of touching Golson's genitals, throwing him against a wall, and then jumping on top of him would be unlawful when confronting the situation of Golson having a contraband candy bar in his possession. It also would have been clear to a reasonable officer that piling on top of a face down inmate when another officer already is on top of him would be unlawful.

**CONCLUSION**

Defendants' motion for summary judgment is GRANTED in part and DENIED in part. The motion is GRANTED as the claims against medical staff (Erguiza, Bright, and Kumar) and DENIED as to the claims against the correctional officers (Narvaez, Alvarado, Akins, and Aranda).

Pursuant to Local Rule 72-1, this matter is referred to the Honorable Robert Illman for purposes of settlement of the remaining excessive force claims against Narvaez, Alvarado, Akins, and Aranda. The parties will be advised of the date, time and place of the next appearance by notice from Judge Illman.

Plaintiff must attend all conferences scheduled by Judge Illman. Failure to attend even one conference, or a failure to comply with Judge Illman's instructions and orders in

every respect, may result in the dismissal of this action with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute.

The Clerk shall forward a copy of this order to all parties and to Judge Illman, and terminate all pending motions.  This action is STAYED until further order of this Court.

**IT IS SO ORDERED.**

**Dated:**  December 1, 2023



WILLIAM H. ORRICK
United States District Judge